# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF NORTH CAROLINA
# GREENSBORO DIVISION

| IN THE MATTER OF:<br><br>nCoat, Inc., et al<br><br>Debtors | Case No. 10-11512<br>(Consolidated For Administration)<br>Chapter 11 |
|---|---|
| **Order Confirming Sale, Transferring Liens To Proceeds, Approving Assumption And Assignment Of Assumed Contracts, And Other Relief** ||

This matter came before the Court after due notice and hearing on September 23, 2010 (the "Final Hearing") in connection with the Motion To (A) Approve Sale Of Substantially All Assets, (B) Establish Related Sale Procedures And Approve Break-up Fee, (C) Transfer Any And All Claims, Liens, Encumbrances And Interests In Sale Assets To Proceeds Of Sale, (D) Approve Form And Manner Of Notice Of Sale, (E) Assume And Assign Certain Leases And Executory Contracts, And (F) Schedule Hearings To Establish Sales Procedures And Confirm Sale (the "Sale Motion") filed by nCoat, Inc. ("nCoat"), nTech, Inc. ("nTech"), MCC, Inc. ("MCC") and High Performance Coatings, Inc. ("HPC" and collectively, the "Debtors") pursuant to §§ 105, 363 and 365 of the Bankruptcy Code and Rules 2002, 6004, 6006 and 9006 of the Federal Rules of Bankruptcy Procedure.

Following a hearing (the "Interim Hearing"), the Court entered the Order Approving (A) Form And Manner Of Notice and Sale Procedures, (B) Setting Deadlines For Statements of Defaults, Overbids And Objections, And (C) Scheduling Auction And Final Hearing To Confirm Sale (the "Sale Procedures Order"), pursuant to which the Debtors transmitted certain materials as specified therein to each party who had previously or subsequently expressed an interest in bidding on the property, and solicited bids conforming to the requirements set forth in the Order. In addition, notice of the Sale Motion, the Interim Hearing and the Final Hearing was timely served on all parties in interest entitled thereto.

No bids were received by the Debtors other than the initial bid submitted by Fort Ashford Funds, LLC. An objection (the "Committee Objection") to the Sale Motion was

filed by Official Committee of Unsecured Creditors for nCoat (the "Committee"), and no other objections were filed.

Upon further consideration of the Sale Motion, the Committee Objection, the evidence submitted in support thereof and the arguments of parties wishing to be heard, and sufficient cause appearing, the Court makes the following findings:

1. This Court has jurisdiction over the Sale Motion pursuant to 28 U.S.C. §§157 and 1334, and this matter is a core proceeding under 28 U.S.C. §157(b)(2). Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.

2. Appropriate, due and adequate notice of the Sale Motion and the hearing thereon has been provided to all creditors, customers, and employees of the Debtors, all persons believed or known to have an interest in purchasing the assets of the Debtors, all parties to executory contracts and leases, all interested governmental, pension and environmental authorities, the Office of the United States Bankruptcy Administrator, and all other parties who filed requests for notices under Bankruptcy Rule 9010(b) or were entitled to notice under Bankruptcy Rule 2002, and such notice is in compliance with Bankruptcy Rules 2002, 6004, 6006, and 9014. No other or further notice of the Sale Motion, the hearing thereon, or entry of this Order is necessary.

3. Pursuant to the Sale Procedures Order, competing bids for the Sale Assets were solicited. Fort Ashford Funds, LLC submitted the highest and best bid for the Sale Assets and was designated by the Debtors as the "Purchaser" (as defined in the Sale Procedures). As there were no competing bids, the provision in the Sale Procedures Order regarding the "Break-up Fee" is moot and no such fee is due or payable in connection with the sale.

4. The sale is within the reasonable business judgment of the Debtors and is in the best interest of the estates, after having exposed the "Sale Assets" (defined as the "Purchase Assets" in section 2.1 of the Asset Purchase Agreement) to higher and better bids. The Purchase Price (as defined the Asset Purchase Agreement) that the Purchaser has agreed to pay for the Sale Assets is fair and constitutes full and adequate consideration and reasonably equivalent value for the Sale Assets. The terms and conditions of the Asset Purchase Agreement in their totality are fair and reasonable and the transactions contemplated therein are in the best interest of the Debtors' estates.

5. Approval of the related assumption and assignment to the Purchaser of the Assumed Contracts (as defined the Asset Purchase Agreement) is a necessary condition and part of the sale of the Sale Assets and is also in the best interest of the Debtors, their estates, and their creditors.  The Asset Purchase Agreement provides for defaults to be cured, and the Purchaser has demonstrated adequate assurances of future performance of the Assumed Contracts.

6. Without an expeditious sale of the Purchased Assets to the Purchaser, including assumption and assignment of the Assigned Contracts and Leases (as defined the Asset Purchase Agreement), there will likely be a substantial diminution in the value of the Debtors and their assets to the detriment of their creditors and other parties in interest. Exigent circumstances exist to justify a sale of substantially all of the Debtors' assets pursuant to Section 363 of the Bankruptcy Code, rather than pursuant to a confirmed chapter 11 plan under Section 1129 of the Bankruptcy Code.

7. The Debtors have full corporate power and authority to execute, deliver and perform the Asset Purchase Agreement, and the sale of the Sale Assets has been duly and validly authorized by all necessary corporate authority to consummate the transactions contemplated by the Asset Purchase Agreement.  No consent or approval by third parties is required to consummate such transactions.

8. One or more of the grounds for a sale free and clear pursuant to Section 363(f) of the Bankruptcy Code has been met as to each claim, lien, encumbrance or interest in any or all of the Sale Assets

9. Fort Ashford Funds, LLC is a "good faith purchaser" as defined in Section 363(m) of the Bankruptcy Code, and none of the grounds set forth in Section 363(n) exist with respect to a sale to Fort Ashford Funds, LLC.

Based upon the foregoing findings, the Court concludes that the Sale Motion should be granted and for good and sufficient reasons appearing it is hereby ORDERED as follows:

1. The Sale Motion is granted in all respects, as provided herein, and the Committee Objection is denied.

2. The Debtors are authorized and directed pursuant to Sections 105, 363(b) and 363(f) of the Bankruptcy Code to sell the Sale Assets to Purchaser pursuant to and in

material accord with the terms and conditions of the Asset Purchase Agreement free and clear of any and all liens, claims, mortgages, deeds of trust, security interests, restrictions, prior assignments, liabilities (other than the Assumed Liabilities described in the Asset Purchase Agreement), obligations, encumbrances, charges, and other interests of any and every type, kind, nature or description whatsoever, whether asserted or unasserted, known or unknown, perfected or unperfected, recorded or unrecorded, scheduled or unscheduled, inchoate or choate, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, disputed or undisputed, whether arising before or after Debtors' chapter 11 filing, or imposed by agreement, statute, common law, equity or otherwise, including, but not limited to, liens asserted by the Debtors' customers, shareholders, employees, secured creditors, landlords and equipment lessors, tax authorities, priority creditors, administrative expense claimants, and other creditors.

3. The Debtors are also authorized to assign to the Purchaser all the Debtors' rights under (i) any Assumed Contract, (ii) any non-compete agreement or non-disclosure agreement with any employee or third party, (iii) any purchase order with any customer, and (iv) any confidentiality agreement executed by any party in connection with the proposed sale and the opportunity to conduct due diligence prior to submitting any bid.

4. All persons and entities which now or hereafter possess some or all of the Sale Assets are directed to surrender possession thereof to the Purchaser on the Closing Date (as defined the Asset Purchase Agreement) or at such time thereafter as Purchaser may request in writing. The Debtors are further ordered and directed to perform all of the Debtors' obligations under the Asset Purchase Agreement necessary in order to consummate and timely close the sale, transfer and conveyance of the Sale Assets to Purchaser.

5. Each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release or terminate at Closing any lien upon or against the Purchased Assets. If any person or entity that has filed or recorded financing statements or other documents or agreements evidencing or perfecting liens upon or against the Sale Assets shall not have delivered to the Debtors prior to Closing, in proper form for filing and executed by the appropriate persons, termination statements, instruments of satisfaction, and releases of Liens (as defined the

Asset Purchase Agreement), the Debtors are hereby authorized and directed to execute and file such documents on behalf of such person or entity with respect to such Sale Assets immediately prior to or during Closing.

6. The Debtors shall retain the Excluded Assets (as defined in section 2.2 of the Asset Purchase Agreement), including but not limited to (i) the personal property subject to the liens securing the note held by Michael Novakovic, (ii) the personal property expressly excluded from the Sale Assets by the Purchaser consisting of the software which is the subject of the Master Lease Agreement with Key Equipment Finance, Inc., Master Lease Agreement No. 1103117 (designated a capital lease), and (iii) any causes of action by or on behalf of the Debtors against the Debtors' officers and directors.

7. The Purchased Assets do not include any asset in the Debtors' custody, possession or control that is owned by any customers of the Debtors. Nothing in this Order or in the Asset Purchase Agreement shall be construed to convey upon Purchaser any right, title or interest in or to any asset owned by any customer of the Debtors or to impose upon Purchaser any responsibility, liability or obligation with respect to any such asset.

8. The Debtors are authorized to assume and assign to the Purchaser or its designee the following leases and contracts (as the "Assumed Contracts"), having been so designated by the Purchaser:

    a. nCoat: Memorandum of Understanding with North Carolina A&T State University dated December 4, 2007 (collaboration agreement).

    b. nTech: (none)

    c. MCC: Lease with Kachina Industrial Park, LLC dated July 9, 2003 for the lease of real property located at 1840 W. Drake Drive, #102, Tempe, Arizona.

    d. HPC:

        i. Lease Agreement with Balboa Capital Corporation, Lease No. 130232-001 (finishing machine).

        ii. Master Lease Agreement with Direct Capital Corporation, Agreement No. 07-18704 (oven).

   iii. Lease Agreement with David B. Gibb for the lease of real property located at 400 N. Glade Ave., Oklahoma City, OK.

   iv. Lease Agreement with Ralf, LLC dated October 15, 2005 for the lease of real property located at 412 N. Glade Ave., Oklahoma City, OK.

 9.  The Debtors are authorized to <u>reject</u> the following leases and contracts, having not been designated as Assumed Contracts by the Purchaser:

  a. <u>nCoat</u>:

   i. Lease with Maintenance Agreement with Toshiba Financial Services signed by Toshiba on May 1, 2008 (Copier lease).

   ii. Asset Purchase and Sale and Leaseback Agreement dated August 26, 2009 with Zanett Opportunity Fund, Ltd. (Coating Application Assets).

   iii. Settlement Agreement and General Release with M. Novakovic and Novak-Ban, LLC

   iv. Employment Agreement with Dave Burton (term agreement for his employment with nTech).

  b. <u>nTech</u>: (none)

  c. <u>MCC</u>:

   i. Commercial Lease Agreement dated October 13, 2005 with Philadelphia Suburban Development Corp. for the lease of real property located at 100 Ross Road, King of Prussia, PA.

   ii. Sublease Agreement with Banyan Productions, Inc. for the sublease of real property located at 100 Ross Road, King of Prussia, Pennsylvania.

   iii. Settlement Agreement and General Release with M. Novakovic and Novak-Ban, LLC.

   iv. License Agreement with Jet Hot Coatings Australia.

  d. <u>HPC</u>:

   i. Lease Agreement ("Mebane Lease") with Mebane Warehouse, LLC ("Mebane Warehouse") for the lease of real property

> located at 7237 Pace Drive, Burlington, NC ("Mebane Property"), pursuant to the terms of the Consent Order entered with respect to such lease.
>> ii. Employment Agreement with Bart C. MacKay (term agreement).
>> iii. At-Will Employment Agreements with Cindy Powell, Jeremy Shields, Kay Johnson, David Hatch, Darin Tew, Mat Petrauskas, and Sudeer Neralla.
>> iv. License Agreement with HPC New Zealand.
>> v. License Agreement with CCC HPC France.
>> vi. UPS Customer Technology Program Agreement with United Parcel Service, Inc., Account No. 28F45W (UPS printer).

10. The Debtors are authorized to credit, pay or provide for the payment at Closing of the following secured claims and cure payments on the Assumed Contracts; provided however, (i) payment of the prepetition secured claim of Fort Ashford Funds, LLC shall be without prejudice to the right, if any, of any party in interest other than the Debtors to pursue any avoidance action with respect to such claim and/or payment, and (ii) payment of the remaining secured claims listed below shall be without prejudice to the right of the Debtors or any party in interest to pursue any avoidance action with respect to such claims and/or payments. The payoff amounts for secured claims and cure payments relating to the Assumed Contracts set forth in this paragraph shall be binding and in full satisfaction of any such secured claim and cure payment due any party. The acceptance by any party of such payoff amount or cure payment shall be deemed in full satisfaction and shall constitute a waiver of any claims against the Debtor or the Purchaser relating to the secured claims and cure payments.
   a. All outstanding ad valorem taxes for the current year.
   b. The outstanding amount owed to Fort Ashford Funds, LLC in respect to the prepetition loan ($142,500 plus accrued interest) and post-petition financing (presently zero) provided to the Debtors.

c. Secured claim evidenced by Lease Agreement with Balboa Capital Corporation, Lease No. 130232-000 (storage racks) determined to be a capital lease, in the amount of $35,213.

d. Secured claim evidenced by Lease Agreement with GE Capital Corporation, Lease No. 4425778001 (walk-in oven) determined to be a capital lease, in the amount of $10,500.

e. Secured claim evidenced by Lease Agreement with GE Capital Corporation, Lease No. 4425778002 (walk-in-oven) determined to be a capital lease, in the amount of $27,600.

f. Secured claim evidenced by Lease Agreement with National City Commercial Capital Corporation, assigned to Huntington National Bank, Lease No. 73193000 (manufacturing equipment) determined to be a capital lease, in the amount of $53,100.

g. Secured claim evidenced by Equipment Lease Agreement with Royal Bank America Leasing, L.P. (spray booths) determined to be a capital lease, in the amount of $11,550.

h. Cure payments on the Assumed Contracts:
   i. Lease with Kachina Industrial Park, LLC: $53,384.20.
   ii. Lease Agreement with Balboa Capital Corporation: $26,676.49 (per statement of default)
   iii. Master Lease Agreement with Direct Capital Corporation: $1,378.63.
   iv. Lease Agreement with David B. Gibb for the lease of real property located at 400 N. Glade Ave., Oklahoma City, OK: $14,700.00.

11. All remaining sale proceeds shall be retained by the Debtors pending further orders of this Court after notice and hearing. Any allocation of the sale proceeds by or between the Debtors and the Purchaser shall be for tax purposes only and without prejudice to any allocation of the sale proceeds as between the respective Debtors' estates or as between their creditors.

12. Each non-debtor party to the Assumed Contracts shall, as of the Closing, be forever barred and enjoined from asserting against Purchaser, any of the Sale Assets, the Debtors or the Debtors' bankruptcy estates any objection to assumption and assignment of the Assumed Contracts. Assignment of the Assumed Contracts to the Purchaser will not cause a default or otherwise allow the non-debtor parties thereto to terminate or adversely affect the Debtors' or the Purchaser's rights thereunder. Each of the Assumed Contracts shall remain in full force and effect notwithstanding any anti-assignment clause therein. Pursuant to Section 365(k) of the Bankruptcy Code, upon assumption and assignment to the Purchaser of the Assigned Contracts and Leases in accordance with this Order, neither the Debtors nor their estates shall have any liability under the Assumed Contracts for breach thereof or otherwise.

13. The Purchaser shall not assume nor have any liabilities or responsibility for any liabilities or obligations of the Debtors, whether *in rem* claims or *in personam* claims, except with respect to the Assumed Contracts. The Purchaser is hereby granted and is entitled to the protections of a good faith purchaser under Section 363(m) of the Bankruptcy Code, including with respect to assumption and assignment of the Assumed Contracts under Section 365 of the Bankruptcy Code.

14. All creditors and claimants of the Debtors, and all persons having an interest of any nature derived through the Debtors, are permanently enjoined from pursuing any action challenging of affecting the validity or effectiveness of the sale against the Purchaser or the Sale Assets once acquired by the Purchaser.

15. Except as otherwise limited or provided herein, this Order is without prejudice to the right of the Debtors, or the right of any of their creditors, if any, to bring any other action or actions in the Bankruptcy Court ("Actions"), including but not limited to Actions associated with the sale of the Sale Assets, so long as such Actions do not challenge or affect the validity or effectiveness of the sale.

16. This Order and the Asset Purchase Agreement shall be binding upon, and inure to the benefit of the Debtors and the Purchaser, and their respective successors and assigns, including without limitation, any trustee hereafter appointed in the Debtors' chapter 11 cases or, in the event of a conversion under Section 1112 of the Bankruptcy Code, in the Debtors' chapter 7 cases. This Order shall also be binding upon and govern

the acts of all persons and entities, including without limitation, all filing agents, recording agents, secretary of states, and county clerks, who may be required by operation of law to accept, file, register, or otherwise record or release any documents or instruments relating to liens.

17. The Debtors and the Purchaser are authorized by written agreement to amend, modify, supplement, or waive any provision of the Asset Purchase Agreement after the date of this Order and without further approval by this Court; provided, however, that no such amendment, modification, supplement or waiver shall change the Asset Purchase Agreement in a manner that is materially disadvantageous to the Debtors or their estates.

18. The Purchaser is not a successor to any of the Debtors, their businesses, or their bankruptcy estates by reason of any theory of law or equity. Other than the Assumed Liabilities described in the Asset Purchase Agreement, the Purchaser shall not assume or be responsible in any way for any liability or obligation of the Debtors, whether known or unknown, liquidated or unliquidated, contingent, disputed, fixed, accrued or disclosed including but not limited to the Excluded Liabilities described in the Asset Purchase Agreement.

19. Pursuant to Sections 105 and 363 of the Bankruptcy Code, any and all creditors of the Debtors shall be barred, estopped and enjoined from taking any action of any kind against the Purchaser or the Sale Assets on account of any claim against the Debtors or any of the Sale Assets.

20. Effective upon the Closing, all persons and entities shall be permanently and forever barred, restrained and enjoined from commencing or continuing in any manner any action or other proceeding of any kind against the Purchaser as alleged successor with respect to any liens upon or against the Sale Assets.

21. No bulk sale law or any similar law of any state or other jurisdiction shall apply in any way to the transactions contemplated by the Asset Purchase Agreement.

22. To the extent that any of the Debtors' employees are offered employment with the Purchaser, such employees' employment with the Debtors shall not be deemed to have terminated solely for purposes of the Worker Adjustment and Retraining Notification ("WARN") Act.

23. The Debtors are hereby directed (i) on or before the Closing, directly or through the appropriate third party servicer, to provide any and all notices required by the Consolidated Omnibus Budget Reconciliation Act ("COBRA") to all of the Debtors' employees of their rights to continue health care insurance coverage under the Debtors' current health coverage following their resignation or termination of employment with Debtors; and (ii) through the Closing and afterward, to perform all obligations under the Debtors' health insurance contracts or under COBRA.

24. The 14-day stay authorized by Bankruptcy Rule 6004(h) and 6006(d) shall not apply to this Order which shall be effective immediately upon entry, and the Debtors and the Purchaser may consummate the sale of the Sale Assets and assumption and assignment of the Assumed Contracts as early as the date hereof. The sale approved by this Order is not subject to avoidance pursuant to Section 363(n) of the Bankruptcy Code.

25. This Court shall retain exclusive jurisdiction for the purpose of (i) enforcing the provisions of this Order and the Asset Purchase Agreement, (ii) resolving any dispute regarding this Order, the Asset Purchase Agreement, or the rights and duties of the parties hereunder or thereunder, or (iv) any issues relating to this Order or the Asset Purchase Agreement, including, but not limited to, the interpretation of the provisions of this Order and the terms and conditions of the Asset Purchase Agreement, the status, nature and extent of the Sale Assets and all issues and disputes arising in connection with the relief authorized herein. If and to the extent any provisions of this Order conflict with those of the Asset Purchase Agreement, this Order shall govern and control.

Service List:

nCoat: All creditors and parties in interest

nTech: All creditors and parties in interest

MCC: All creditors and parties in interest

HPC: All creditors and parties in interest